'[No. 984-5-6.  February 26, 1903.]

## ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY, Plaintiff in Error, v. TERRITORY OF NEW MEXICO, Defendant in Error.

## THE RIO GRANDE, MEXICO & PACIFIC RAILROAD COMPANY, Plaintiff in Error, v. TERRITORY OF NEW MEXICO, Defendant in Error.

## SILVER CITY, DEMING & PACIFIC RAILROAD COMPANY, Plaintiff in Error, v. TERRITORY OF NEW MEXICO, Defendant in Error.

### SYLLABUS.

1.  The court can so far inquire into a judgment, rendered against a county, as to ascertain if the claim is legally payable out of taxes sought to be so applied.

2.  A claim against a county merged into judgment, carries with it all the infirmities of want of authority of the county commissioners to levy a tax to pay such claim.

3.  If the county commissioners have no authority to levy a tax to pay a claim against a county, they have no authority to levy a tax to pay a judgment based on such claim.

Error to the district court of Grant county, before FRANK W. PARKER, Associate Justice. Judgment for defendant in error.

H. L. WALDO AND R. E. TWITCHELL for plaintiffs in error.

No tax, territorial, precinct or municipal can be levied without authority of law.

1 Desty on Taxation, page 207.

The limitation fixed by the Legislature is three mills on the dollar.

Laws of 1889, sec. 2, p. 141.

When the act of 1889 was passed, the limitation of taxation for county current expenses, county purposes, was two and one-half mills on the dollar.

Laughlin v. County Commissioners, 3. N. M. 264.

The statute upon which the plaintiff relies to support these judgment levies is sec. 657 of the Compiled Laws N. M. 1897.

The issue of the certificates and the approval of the accounts was a violation of the act of 1889. Can that act be evaded by merging these claims into judgments resulting in a levy for current expenses vastly in excess of the statutory limitation?

Board of County Commissioners v. Blake, 25 Kas. 247; Clark v. Wolf, 29 Iowa 197; Grand Island Rd. Co. v. Baker, 45 Pac. 501.

The last case above cited is from Wyoming, and it will be observed that the Wyoming statute is almost identical with our statute.

Revised Statutes of Wyoming, 1887, sec. 1796.

No right to make a levy can arise except by express words, or by necessary implication.

Dillon on Municipal Corporations, p. 605; Commissioners v. King, 67 Fed. 207; Arnold v. Hawkins, 8 S. W. 18; Book v. Earl, 87 Mo. 246; Black v. McGonigle, 15 S. W. 615; Supervisors v. United States, 18 Wallace 71.

Butz v. City of Muscatine distinguished, but not in conflict.

See also Jeffries v. Lawrence, 42 Iowa 505; Iowa Land Company v. County, 39 Iowa 124; 25 Am. and Eng. Ency. Law, p. 587, note 1; United States v. Miller Co., 4 Dillon 233; East St. Louis v. Underwood, 105 Ill. 308; United States v. Macon County, 99 U. S. 591.

It is contended by the defendant in error that the issues in these cases are determined by the opinion of

this court in the case of United States Trust Company v. Territory, 62 Pac. 902, while plaintiffs in error contend that the cases at bar are clearly distinguishable from that case.

Even though the claims which were merged into judgment were of that sort made compulsory by operation of law, such as the payment of election and jail expenses, salaries and fees to county officers, still their legal status is unchanged if the legislative prohibition has been disregarded.

> Lake County v. Rollins, 130 U. S. p. 669.

A. H. HARLLEE and W. H. H. LLEWELLYN for defendants in error.

"A judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all citizens thereof, though not made parties defendant by name."

> Black on Judgments, sec. 584.

A judgment for a sum of money against a county, imposes an obligation upon the citizens which they are bound to discharge.

> Freeman on Judgments, sec. 178.

The principle of res adjudicata extends not only to questions of fact and of law, which were decided in the former suit, but also to the grounds of recovery or defense which might have been but were not presented.

> Belloit v. Morgan, 7 Wall. (U. S.) 619;
> Harmon v. Auditor of Public Accounts, 123
> Ill.—, 5 Am St. Rep. 502; Bear v. Board of
> County Commissioners of Brunswick County,
> 122 N. C. 434, 65 Am. St. Rep. 711; United
> States v. New Orleans, 98 U. S. 381; Wolf v.
> United States, 103 U. S. 358; see also Grant

County v. Lake County, 21 Pac. 447 (Oregon); M'cCracken v. City of San Francisco, 16 Cal. 591; Lewis v. Widber, 33 Pac. 1128 (California); Potter v. Douglas, 87 Mo. 246.

OPINION OF THE COURT.

BAKER, J.—The three above-entitled cases were tried as one case upon an agreed statement of facts in the district court of Grant county, without the intervention of a jury, and judgment rendered against said several plaintiffs in error, from which judgment writs of error were sued out.

The special levy of taxes contested by plaintiffs in error was made to pay certain judgments against said county, which judgments were rendered upon claims constituting a part of the county current expenses of said county for the years 1895, 1896, and 1897. This special levy was in excess of the statutory limit of two and one-half mills for county current expenses and the one-half of one mill for deficit.

The all important question raised in this case is whether or not the court can inquire into a judgment to determine whether the claim is one legally payable out of the taxes sought to be collected.

Defendant in error contends that the judgments are not county current expenses, but judgments, and that the nature of the claim can not be inquired into.

This is the first time this court has been called upon to construe these statutes and the effect of a judgment against a county for county current expenses in excess of three mills, upon the authority of county commissioners to levy taxes to pay the same. Section 1 of chapter 2 of the Session Laws of 1874 provides that property "shall be subject to an advalorem tax of one per centum upon each dollar of the value thereof, which shall be assessed and collected as is now, or as may be hereafter provided by law for the assessment and

collection of taxes, one-half thereof to be applied solely and exclusively for Territorial purposes, one-fourth in like manner for county purposes and the remaining one-fourth to be applied to school purposes." Section 7 of chapter 1 of the Session Laws of 1876 (sec. 657, Compiled Laws of 1897) provides: "When a judgment shall be rendered against any board of county commissioners of any county or against any county officer in an action prosecuted by or against him in his official name, where the same shall be paid by the county, no execution shall issue upon such judgment, but the same shall be levied and paid by taxes as other county charges, and when so collected shall be paid by the county treasurer to the person to whom the same shall be adjudged, upon the delivery of a proper voucher therefor." Paragraph 10 of section 14 of the act provides: "In no event shall the said commissioners levy any assessment of taxes exceeding one per cent." Section 6 of chapter 62 of the Session Laws of 1882 provides: "There shall be levied and assessed upon the taxable property within this Territory in each year, the following taxes: For Territorial revenue half of one per cent; for ordinary county revenue one-fourth of one per cent; for maintenance and support of public schools one-fourth of one per cent. Section 2 of chapter 68 of the Laws of 1889 provides, among other things, "That if at any time the taxes collected during any year shall not be sufficient to meet the current expenses of such county for the succeeding year, then it shall be lawful at the next annual levy of taxes for the said county commissioners of said county to make an additional levy not to exceed one-half of one mill on each dollar of taxable property in such county for the purpose of making up such deficit in the current expenses of such county."

These are all the provisions of the statutes governing the levy of taxes during the time involved in this case. It will be observed that section 1 of chapter

2 of the Session Laws of 1874, and section 6 of chapter 62, Session Laws of 1882 limit the levy for *county purposes* to one-fourth of one per cent. Paragraph 10 of section 14 of chapter 1 of the Session Laws of 1876 restricts the levy to not exceed one per cent, but is silent as to the one-fourth of one per cent for county expenses. As these acts are not in conflict with each other, all must stand. Therefore, for county current expenses only one-fourth of one per cent referred to in said statutes could be levied for county current expenses. Section 2 of chapter 68 of the Laws of 1889 provides, that an additional levy not to exceed one-half of one mill may be made for the purpose of making up a deficit of the previous year; hence, for county current expenses there could be a levy of only two and one-half mills, plus one-half of one mill in case of a deficit. Any levy beyond this would be without authority of law, and we think it well settled, if *no authority of law* to make a levy there is *no legal tax.* Dillon on Municipal Corporations, p. 605; County Commissioners v. King, 67 Fed. 207. Neither public necessity nor public luxury is sufficient authority to make a levy of taxes. A tax is forced contribution and can only be sustained on the theory of good government. If what we have said concerning the authority, or, rather, limited authority, of the county commissioners to levy taxes, is true, was it possible for said county commissioners to create an indebtedness for county current expenses in excess of money raised by the authorized levy, to-wit, three mills, and then have this evidence of indebtedness transformed into another form of evidence of indebtedness, namely, that of a judgment, and then resort to said chapter 1, section 7 of the Session Laws of 1876 (sec. 657, Compiled Laws, 1897) and make a special levy over and above the authorized levy for county current expenses, for the purpose of paying such judgment? We think not. If they can, all the provisions and attempted restrictions by statutes, extending over many years, of county commissioners to levy taxes, must stand for

naught; or, in other words, they can levy two and one-half mills, plus one-half mill, or as much more as they please, by transforming the items of county current expenses into a judgment. The judgment is only the evidence of an indebtedness against the county, brought into being by a transformation of the original evidence of indebtedness, whether it was in form of a warrant, and allowed claim, a bill rendered for services performed for the county, the keeping of prisoners, or any other form of evidence of indebtedness for county current expenses. Of course, a judgment thus rendered is an unquestionable evidence of indebtedness, so far as any collateral attack upon such judgment is concerned. In our opinion the judgment creditor stands in the same position as any other creditor so far as the enforcement of his claim is concerned. He can recover and secure satisfaction of his judgment through the channel of the statutes and in no other way; and if the current expenses of a county have exceeded two and one-half mills, and one-half of one mill for a deficit, and the claim is against the county for county current expenses in excess of the authorized levy, then there is no legal remedy for the collection of such a judgment. These statutes are neither intricate nor ambiguous; to construe them needs neither precedent nor authority; all that is required is to give common meaning to common language. Defendant in error contends that no inquiry can be made concerning the judgment against the county, or the indebtedness for which the judgments were rendered. As we have said before, if that position is tenable, then all attempted legislation to restrict county commissioners in the amount of levy of taxes for county current expenses is in conflict with this view of the law, and either said section 7 of chapter 1 of the Session Laws of 1876 must stand and the others fall, or we must construe all these statutes together in the manner as we have attempted here-

inbefore to do. It must be understood that plaintiffs in error do not attack the judgments of defendant in error, but only the means of enforcing payment of them; so it is not a collateral attack nor any other attack upon the judgments. We are of the opinion that plaintiffs in error can inquire into the cause of action upon which the judgments were rendered, and if it is found, that the indebtedness for which said judgments were rendered, was for county current expenses of said county, then no levy could have been made by the county commissioners for the payment of such judgments, except such as is provided in the two and one-half mills regular levy and the one-half of one mill levy for the purpose of making up a deficit. Lake County v. Rollins, 130 U. S. 662; Ralls County Court v. United States, 105 U. S. 733; United States v. Macon Co., 99 U. S. 582; Railroad v. Baker, etc., 45 Pac. 494; Supervisors v. U. S., 18 Wall. 71; Knox Co. v. Bank, 147 U. S. 91. In Ralls County v. U. S., supra, the law authorized the issue of bonds by Ralls county, to pay for stock subscription for a railroad company and to take proper steps to protect the interests and credit of the county. The bonds were issued with interest coupons. There was a suit upon some of the coupons and judgment was rendered thereon. There was a writ of mandamus to require the county court of said county to levy a tax for the payment of this judgment. There was a defense that there was no express statute for levying a tax to pay the judgment. This position seems to be admitted. The court however among other things says:    "While the coupons are merged in the judgment *they carried with them into the judgment all the remedies which in law formed a part of their contract obligations, and these remedies may still be enforced in all proper ways, notwithstanding the change in the form of the debt."*    Approved in Ralls County Court v. United States, 154 U. S. 675. If there is no provision of law for the levy of a tax to pay the judgment, but there is such a provision to levy a tax for

the payment of the indebtedness on which a judgment was obtained, and if we may inquire into such judgment to the extent of ascertaining the indebtedness for which the judgment was rendered for the purpose of showing that the original indebtedness was one within the purview of the law, for which a levy could be made for the payment thereof, and thus enforce the payment of the judgment, then would it not be equally as well founded in principle that we may inquire into the original indebtedness upon which a judgment was rendered, for the purpose of showing that the county commissioners had *no authority* of law to *create such indebtedness* on which judgment was rendered, or to levy a special tax for the payment of such indebtedness?   If no authority existed to make a levy to pay such original claim then it follows, that there was no authority to make a levy to pay the judgment.   In the United States v. County of Macon, 99 U. S. 591, Mr. Chief Justice Waite, speaking for the court, says:   "We have not been referred to any statute which gives a *judgment creditor any right to a levy of taxes which he did not have before the judgment.*   The judgment has the effect of a judicial determination of the validity of his demand and of the amount that is due, *but it gives him no new rights in respect to the means of payment.*"   This principle was reaffirmed upon the authority of this case in U. S. v. Co. of Macon, 144 U. S. 568; See also Rose's notes on U. S. Rep., vol. 9, p. 749.   This disposes of this branch of the case.   So far as rendereing judgment against the plaintiffs in error, upon said judgments against said county by the trial court, the case is hereby reversed.   Trust Co. v. Territory, supra, may have misled the trial court in this case.

Defendant in error relies upon United States Trust Company v. Territory, 10 N. M. 416, 62 Pac. 987.   On first blush it would seem that Trust Company v. Territory, supra, would be in harmony with the contention of defendant in error, but by a close and careful examina-

.tion of that case it will be observed that the court says: "For just what county expenses they (county warrants) were issued, does not appear.    It may have been for .keeping prisoners in jail. . . ."    The pleadings in .that case did not show that the items upon which the judgment was rendered, were for county current ex-·penses.    The court could not pass upon the question of whether or not you could go. behind the judgment to ascertain on what the judgment was rendered, such question not being before the court.    In that case the learned judge said: "These claims having been merged into a judgment are not subject to collateral attacks in proceedings brought to enforce the payment of tax levies, and in proceedings such as this it is improper for the courts to go behind the judgment to ascertain upon what it was based for the purpose of preventing its payment," which proposition was correct under the issues raised *in that case*.    The learned judge may have been a little unfortunate in using the language above quoted, that question not being raised by the pleadings.    So far as the case of Trust Company v. Territory, supra, is, if at all, in conflict with this opinion, the same is hereby over-ruled.

The item of $276.21, arising on account of a raise in the valuation of the property of plaintiff in error, by the said board of county commissioners, is not con-tested.    Therefore, it is ordered that defendant in error have and recover judgment in this court for said sum of $276.21, with interest and costs.

John R. McFie, A. J., concurs.    Mills, C. J., con-curs in the result.