115 P.2d 80

STATE ex rel. MARTIN v. HARRIS, Chief Tax Com'r, et al.

No. 4606.

Supreme Court of New Mexico.

June 27, 1941.

C. C. McCulloh, of Santa Fe, and Floyd W. Beutler, of Taos, for appellants.

Kiker & Sanchez, of Santa Fe, for appellee.

MABRY, Justice.

Relator below sought by mandamus to compel the Board of County Commissioners of Taos County to make a special tax levy to produce funds for the payment of the balance due on a judgment owned by her upon which there remains unpaid the sum of $1,203.98 with accrued interest. State Tax Commission and the individual members thereof and the Assessor and Treasurer of said County were joined as respondents to compel the performance of certain official duties incident to perfecting the levy, in the case of State Tax Commission, merely the approval thereof. No appearance seems to have been entered for the Assessor and Treasurer. The record fairly indicates that the Board of County Commissioners approved and consented that the alternative writ previously issued should be made peremptory and State Tax Commission answered challenging relator's

right to the writ. Upon final hearing a peremptory writ of mandamus was ordered and State Tax Commission prosecutes this appeal.

The relator came into ownership of the judgment through succession from her deceased husband, the late Dr. Thomas P. Martin of Taos. He had served as County Health Officer of Taos County for the fiscal years 1930–1931, 1931–1932, 1932–1933, 1933–1934 and 1934–1935. In cause No. 3271, theretofore pending on the civil docket of the district court of said county, the relator then serving as executrix of the last will and testament of her deceased husband, had recovered judgment against the board of county commissioners of said county in the sum of $1,569.44, later reduced by a credit thereon for personal taxes due from her decedent's estate to the principal balance found due in the current mandamus action. Upon his death the account of decedent with the county for his services as health officer over the period indicated had not been balanced and the basis of the judgment recovered as aforesaid was the county's liability in relation thereto. This proceeding represents the second effort to enforce a levy for satisfaction of relator's judgment, a peremptory writ of mandamus having issued in a prior mandamus action directing a levy for the year 1939. The board of county commissioners had declined to obey the writ, seemingly as alleged and not denied, because of the refusal of State Tax Commission to approve the levy ordered. The Commission was not a party to the earlier proceeding.

Briefly summarized, the defenses interposed by the respondent commission to the relief prayed are as follows:

(1) That to obey the writ would cause the tax rate to exceed the five mill limit for current expenses imposed on counties by 1929 Comp., § 33-5601;

(2) That compliance with the order would circumvent the twenty mill limitation provided by Const.Art. 8, § 2, for tax levies on real and personal property for all purposes;

(3) That compliance with the alternative writ would operate to violate the Bateman Act (1929 Comp., § 33-4241 et seq.) prohibiting counties from becoming indebted or contracting debts during any current year which cannot be paid from taxes during such current year; and

(4) That the respondent commission has had reposed in it by the legislature judgment and discretion in the matter of approving budgets and determining the amount of money that may be expended by counties for county purposes and that to grant the writ prayed would be to control its discretion contrary to the principles applicable in mandamus.

Touching the issues raised by the petition and answer, the respondent commission tendered evidence for the purpose of showing that the levy sought would cause the county budget for current expenses to exceed the statutory five mill limitation. The only evidence produced on this issue was the testimony of the County Treasurer.

It disclosed that for the two or three years immediately preceding the one for which the levy was sought, the rate to provide funds to meet the county budget for current expenses had never been less than 5 mills. Owing to the fact that the 1940–1941 budget had not been approved at the time of the hearing, the witness could not state what the rate would be, although he did say that during the budget hearings thereon Chief Tax Commissioner Harris, the supervisor of budgets, had declined to permit inclusion of one hundred dollars for a new typewriter for witness' office on the ground that they "could not go over the levies required for the budget". On cross examination the witness admitted there was no certainty that because the levy was 5 mills one year, it would be the same another; that the expenditure for different items might vary. Upon motion all of this testimony was stricken as a mere expression of opinion that the levy for the fiscal year involved would amount to five mills.

Evidence also was tendered by respondent and rejected by the court to show the percentage of tax collections in Taos County for each of the three fiscal years involved and the agreed salary of the county health officer for each of said years. The ground upon which the trial court excluded such evidence, as stated by objecting counsel, is that it was an effort to go behind the judgment in cause No. 3271 and to reopen and relitigate questions properly to have been and presumptively litigated therein which had become res adjudicata as between the parties thereto.

In this court the respondent assigns seven errors, grouping them for argument as follows:

"1. The court erred in striking the testimony of the witness J. B. Martinez, to prove the amount of levy required for the county budget of the present fiscal year.

"2. The court erred in ordering a levy to be made contrary to the constitutional limit of 20 mills for all purposes, and the statutory limit of 5 mills for county purposes.

"3. The court erred in ordering a levy to be made to pay relator's judgment when the entire levy allowed by the Constitution and Laws of this state is necessary for the current operating expenses of this county."

As to the first assignment, it perhaps is enough to say that the trial court correctly struck the testimony of the County Treasurer for the very reason stated in support of the motion to strike, viz., as a mere expression of opinion. However, for another and stronger reason presently to be mentioned, the action of the trial court was proper. We pass further treatment of this claim of error, momentarily, to dispose of the second assignment of error.

Counsel for respondent claim obedience to the writ will violate the 20 mill limitation on the rate of taxation on real and

personal property imposed by Const. Art. 8, § 2. This defense was pleaded in the answer filed. It is correctly stated in their brief that, although we have held that a levy to satisfy a tort judgment may be ordered outside the statutory, limitation of five mills (Barker v. State ex rel. Napoleon, 39 N.M. 434, 49 P.2d 246, and In re Atchison, T. & S. F. Ry. Co.'s Taxes, 41 N.M. 9, 63 P.2d 345), we have not yet been called upon to say, and so have never held, that a levy for a tort judgment could be made outside the 20 mill limitation imposed by Const. Art. 8, § 2. Nor do the facts of the present case call upon us to determine this question.

■ Even if we accept as an established fact in the case (as we presently shall assume in deciding another point) that the entire five mills permissible will be required for county purposes, no evidence was tendered or introduced to show what the rate of levy for state, municipal and other purposes would be, so as to permit determination whether the combined rate would exceed the 20 mill limitation for all purposes imposed by the constitution. Absent such showing, no constitutional question is presented. This renders unnecessary a determination whether the judgment whose payment is sought is a "public debt" as that phrase is used in stating an exception to the 20 mill limitation in Const. Art. 8, § 2.

What has been said disposes of the third error assigned in so far as it rests upon the contention that the levy sought would violate the constitutional limit on the rate of taxation.

Our further treatment of the first error assigned will be so closely related to the discussion of the fourth, fifth and sixth assignments, grouped by counsel for purposes of argument, that we shall present it in disposing of these assignments. They are as follows:

"4. The court erred in refusing to admit any evidence going behind the judgment of relator, and in refusing to make and give respondents requested Findings of Fact, numbered 2 to 7, inclusive.

"5. The court erred in ordering a levy in violation of the Bateman Act.

"6. The court erred in ordering a levy to be made to pay any portion of relator's judgment in excess of the amount actually shown to have been diverted to uses other than that for which a budget was made."

■ Every one of the foregoing assignments 4, 5 and 6, as well as the additional consideration promised of Assignment No. 1, may be disposed of by determining the true basis for the recovery of relator's judgment in cause No. 3271. If the judge trying that cause rested his judgment on the theory of an unlawful and wrongful diversion of funds by the board of county commissioners from the county health fund, that is to say, if he rendered a judgment in tort, then as disclosed by the decisions of this court already cited, neither the statutory five mill limitation nor the prohibitions of the Bateman Act, will

shield the county from a forced levy to satisfy such judgment.

■ There are findings in the judgment in said cause, which strongly support the view that the trial judge rested his judgment on tort—unlawful diversions from the county health fund to other purposes. Finding No. 6 in said judgment is as follows: "6. That the failure to pay the plaintiff in each of the years aforesaid up to the part of the year 1934-1935 beginning January 1, 1935, was due to the act of said defendant and other officers of said county in borrowing and transferring monies from fund to another, and in transferring monies from the fund appropriated, and budgeted to pay plaintiff's testate, to other funds, and in the wrongful use of the defendant and other officers of the county in paying monies which should have been paid to plaintiff's testate on other obligation of said defendant; and that since taxes became delinquent for that part of the year 1934-1935, beginning January 1, 1935, collection of delinquent taxes for said fiscal year have not been covered into the several funds for which said budgets were made for said fiscal year, but have been paid out on warrants issued by defendant on the salary fund and on the general expense fund for said year, so that payments could not be made to plaintiff; and the payment made to plaintiff since the death of said Thomas P. Martin was made by allowing her credit, upon authority of the State Comptroller, upon taxes owing upon property belonging to said estate."

The trial judge in the case at bar necessarily was called upon to construe and appraise the judgment for the payment of which an enforced levy was sought. Incidentally, it was he who rendered the former judgment. If it was a judgment on the claim or account, he could not properly award mandamus if the levy ordered would cause the total levy for county purposes to exceed five mills, which for present purposes we will assume it would. But, the trial judge did award mandamus in favor of relator. Now, in this court for the first time, the respondent urges upon us that the judgment in question was one on the claim, ex contractu—not one for the wrongful diversion, ex delicto. It would have been apt and timely to have made this suggestion below when the trial judge was about to award mandamus, thereby reserving for review here his ruling on the question. Absent action raising this contention below, the judgment awarded is attended by the presumption, well supported by the findings quoted, supra, that wrongful diversion or tort is the theory on which the earlier judgment rests, even though certain judgment recitals, now pointed out, may also suggest a contrary theory.

An explanation of respondent's failure to raise this question below appears from the fact that in the third paragraph of the answer filed the respondent, in an indirect way, consents to the award of mandamus as to so much of the judgment as represents funds shown to have been unlawfully

diverted, notwithstanding the interdictions of the Bateman Act. The same attitude is reflected in the sixth assignment of error, supra, presented in this court. In other words, the respondent says that if the court should hold the Bateman Act no bar to a levy to satisfy a judgment for funds wrongfully diverted,. even though such funds were raised to meet an item of current expense (as it is not)—"then these respondents ought not to be required to approve any amount in excess of the amount which may be actually proved to have been so diverted." And the finding in such judgment is that the failure to pay relator's decedent his budgeted salary in *each* of the years involved, or parts thereof, was due to unlawful diversions. Respondent thus did not fail to sense that a tort theory was being advanced below and did not there suggest this constituted a departure, if it did, from a contract theory urged in the claim filed.

◼ Now, as to the errors claimed under these assignments. First, it is said the court erred in failing to permit respondent to go behind the judgment in cause No. 3271. Two reasons are advanced for so doing. First, to show that it represents or rests upon items for current expense contrary to the provisions of the Bateman Act. For such purpose, there can be no question of the right to look behind the judgment. Atchison, T. & S. F. R. Co. v. Territory, 11 N.M. 669, 72 P. 14; Territory ex rel. Adair v. Board of County Commissioners, 12 N.M. 131,

75 P. 38; State ex rel. Chesher v. Beall, 41 N.M. 652, 73 P.2d 329. But when we hold, as we do, that it sufficiently and affirmatively appears that the judgment rests on tort, there is no occasion to go behind it to ascertain what it discloses on its face. Neither do we question the right to go behind a judgment to ascertain whether it is one for which a levy can be made outside statutory limitations. In re Atchison, T. & S. F. Ry. Co.'s Taxes, supra; Barker v. State ex rel. Napoleon, supra. But here, as in reference to an attempt to show a violation of the Bateman Act, there is no occasion to go behind the judgment to secure an answer to a query which it already affords.

◼ We have then a case where relator holds a final judgment in tort binding on the Board of County Commissioners of Taos County against which neither the five mill limitation nor the Bateman Act may be successfully interposed to defeat a levy for retiring same, and as to which, no sufficient showing was made to invoke the constitutional limitation of twenty mills for all purposes, if available as a defense. In such circumstances we think a clear legal duty rests upon the respondent commission to approve the levy ordered and upon all the respondents to perform the official duties resting upon them in connection therewith. Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P. 2d 1027. The seventh assignment of error thus is seen to be without merit. That an enforced levy is the appropriate method of

satisfying a judgment of this kind, there can be no doubt. Barker v. State ex rel. Napoleon, supra.

The judgment should be affirmed. Pending the prosecution and determination of this appeal there was naturally no provision made for the levy in question in 1940, and since the trial court should now direct that a levy be made for the year 1941, and for each year thereafter until the judgment is paid, the cause will be remanded with direction to the trial court to reinstate the cause upon the docket of the court and to proceed thereafter in a manner not inconsistent with this opinion; and·

It is so.ordered.

BRICE, C. J., and ZINN, SADLER, and BICKLEY, JJ., concur.